Joan Heggen Secretary Department of Community Affairs Tallahassee
QUESTION:
Would the consolidation of the City of Okeechobee and Okeechobee County affect the dedication of certain property when that property has been used by the city for the public purposes for which it was dedicated?
SUMMARY:
The consolidation of the City of Okeechobee and Okeechobee County would have no effect on the dedication of certain property for public purposes made prior to the time when either the city or county was a legal entity.
The information you provided me indicates that the Okeechobee Company, by a document executed before a notary public on January 20, 1914, purported to dedicate certain property for public use as streets, alleys, avenues, plazas, and parks, the property so dedicated being shown on a referenced plat. I assume that the land has been used since that time for the purposes for which dedicated and that the public has not abandoned it. You also sent me a copy of a document entitled `EASEMENT' executed on July 19, 1926, whereby the Okeechobee Company purported to grant the City of Okeechobee an easement on certain described property so that the grantee could erect a city hall and fire station, the easement to continue `so long as the buildings shall stand upon said property and shall be used only and solely for the purposes herein above set out.' I assume that the city did erect a city hall and fire station, that the buildings so erected still stand, and that they have been used for those purposes. Finally, it appears that the Legislature passed by special act a consolidation plan for Okeechobee County which will be voted on by the county electors on September 11, 1979. Chapter 79-521, Laws of Florida.
In addition to these facts which you provided me, my own research has uncovered some additional, pertinent information. The City of Okeechobee was not incorporated until 1915 when the Legislature created it by law. Chapter 7208, 1915, Laws of Florida. When originally created, the City of Okeechobee was part of St. Lucie County; Okeechobee County was created out of a portion of St. Lucie County in 1917. Chapter 7401, 1917, Laws of Florida. The City of Okeechobee, as originally created, was abolished but simultaneously reincorporated as a city in Okeechobee County in 1919. Chapter 8318, 1919, Laws of Florida. Since your inquiry necessarily involves an application of the law to two different documents, I will address the separate issues individually.
With respect to the dedication of certain property as streets, alleys, avenues, plazas, and parks, I am of the opinion that a consolidation of Okeechobee County and the City of Okeechobee would have no effect on that dedication. This is because that dedication was not made to either the city or the county but rather to the general public. It must be noted that neither the city nor the county had any legal existence until after the date of the original dedication; consequently, their subsequent consolidation should have no effect on that dedication. So long as the property dedicated for the described public purposes continues to be used for those purposes, it would seem to matter little what legal form the local governing units adopt. See also ss. 95.36 and95.361, F. S., concerning, respectively, the dedication of land to municipalities for park purposes and the legally presumed dedication of roads to governmental units when they have been continuously and uninterruptedly maintained by those units for 4 years; and see AGO 078-88.
While it is fairly clear that consolidation would have no effect on the original dedication, the effect of consolidation on the property subject to the easement is not so certain. As I understand it, you are concerned that, if the city and county are consolidated into a new governmental entity, the owner of the fee title subject to the easement granted for the city hall and fire station will be able to extinguish the easement by asserting that those buildings are no longer being used for the specific purposes for which the easement was granted. While I can see that this is a matter of some concern to the parties involved and could potentially be of interest to other municipalities, counties, and electors where consolidation is being contemplated, I must decline to issue an opinion on this matter for the following reasons.
To begin with, the property described in the `easement' appears to be part of the same property which was dedicated to the public for use as a park. This raises the issue whether the owner of the fee simple title subject to the public dedication had the power to make such a subsequent grant to the city. It is certainly arguable that the grant to the city was inconsistent with the underlying dedication to the public. However, since more than 50 years have passed since the time the easement was granted, it is questionable whether a court would now entertain such a complaint.
It is also possible that the 1926 grant, while purporting to be an easement, was in fact not a true easement but rather a mere license, revocable by the grantor when the buildings are no longer being used for the purposes for which the license was given. Seegenerally, 11 Fla. Jur. Easements and Licenses, for the distinction between an easement and a license. The importance of the distinction is that an easement implies an interest in land while a license does not and is simply a personal, unassignable privilege or permit to do something on the land of another. In the instant situation, the consolidation plan passed by the Legislature and due to be voted on by the electors provides that the new consolidated government succeeds to, inter alia, the properties and rights of the former governments. See s. 1, Art. I, s. 1.01, Ch. 79-521, Laws of Florida. Consequently, whether the consolidated government can succeed to the city's property interest in the city hall and fire station may turn on whether the `easement' is a true easement or whether it is, in fact, a mere license.
Another issue which appears to be relevant concerns the intent of the original parties to the document. The instrument itself expresses the intent when it refers to the purposes for which the `easement' was granted — viz., the erection of a city hall and fire station. It is not clear whether the original parties contemplated a consolidation of governments within Okeechobee County such that the City of Okeechobee would cease to exist as a corporate entity or, if they did, what effect that was to have on the `easement.' Were the new government to use the city hall for some kind of governmental building, such a use might be found to be consistent with the general intent of the grantor and allowed. On the other hand, such use might be found to be inconsistent with the literal intent of the grantor and disallowed.
It is obvious, however, that the determination of these issues involves an exercise of judicial power, and, as an officer of the executive branch of government, I am not empowered to resolve such questions. Consequently, because the determination of what effect the consolidation of Okeechobee County would have on the `easement' granted to the City of Okeechobee to erect a city hall and fire station involves intertwined questions of law and fact, as well as the application of equitable principles, I must decline to give an opinion on that matter.
In conclusion, I am of the opinion that, based on the facts as set out herein, the consolidation of the City of Okeechobee and Okeechobee County would have no effect on the dedication of certain property for public purposes made prior to the time when either the city or county was a legal entity.
Prepared by:
Percy W. Mallison, Jr. Assistant Attorney General